## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| MARIA M. ALICEA, | ) | 3:22-cv-1406 (KAD) |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| EVERTON FIDER, ET AL., | ) | AUGUST 31, 2023 |
| *Defendants*. | ) | |

## MEMORANDUM OF DECISION
## RE: DEFENDANTS' MOTIONS TO DISMISS (ECF NOS. 15 & 26)

Kari A. Dooley, United States District Judge:

This action arises out of the events of March 28, 2022, when Plaintiff, Maria Alicea, went to the Southport Center for Nursing and Rehabilitation to remove her father, Octavio Alicea, a resident at the facility. Plaintiff sues Defendant Everton Fider, the Director of the facility, and Defendants Walter Burke and Michael Paris, officers with the Fairfield Police Department who responded to the scene when called by facility staff. All Defendants seek dismissal of the Complaint. Plaintiff has opposed the motions. For the reasons set forth below, Defendants' motions to dismiss are GRANTED.

**Standard of Review**

To survive a motion to dismiss filed pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*,

1

550 U.S. at 557).  Legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to a presumption of truth. *Iqbal*, 556 U.S. at 678.  Nevertheless, when reviewing a motion to dismiss, the court must accept well-pleaded factual allegations as true and draw "all reasonable inferences in the non-movant's favor." *Interworks Sys. Inc. v. Merch. Fin. Corp.*, 604 F.3d 692, 699 (2d Cir. 2010).

"Because a Rule 12(b)(6) motion challenges the complaint as presented by the plaintiff, taking no account of its basis in evidence, a court adjudicating such a motion may review only a narrow universe of materials. Generally, we do not look beyond facts stated on the face of the complaint…documents appended to the complaint or incorporated in the complaint by reference, and…matters of which judicial notice may be taken." *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016) (citations and internal quotation marks omitted)

Courts liberally construe pleadings and briefs submitted by self-represented plaintiffs, "reading such submissions to raise the strongest arguments they suggest." *McLeod v. Jewish Guild for the Blind*, 864 F.3d 154, 156–57 (2d Cir. 2017). If a *pro se* complaint is dismissed, the court should grant leave to amend "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would succeed in stating a claim." *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 796 (2d Cir. 1999).

**Allegations**

Plaintiff's Complaint is a single page submitted on a superior court form for the filing of motions. She attaches a PACER docket entry from a different federal case, *Alicea v. Bridgeport et al.*, Case No. 3:22-cv-221 (KAD), which reflects the Recommended Ruling of Magistrate Judge Vatti recommending that the complaint in that case be dismissed with prejudice.[1] She also attaches

---

[1] The undersigned subsequently accepted, approved and adopted this recommended ruling. *See id.* at ECF No. 26. Plaintiff appealed the Court's order to the Second Circuit Court of Appeals. In a hand-written note on the attachment

a Fairfield Police Department Incident Report from the March 28, 2022 incident at the Southport nursing care facility that gives rise to her claims. Finally, she attaches copies of her Husky Health Connecticut identification card.

While the allegations are largely inscrutable, Plaintiff indicates that she seeks relief against Officer Burke for violating her Fourth Amendment rights, which the Court construes as an excessive force claim, for kicking her out of Southport and then phoning her and threatening to arrest her if she visits her father at the nursing home. She alleges that she was trying to "assist, advocate and see" her father who, she alleges, is being abused and neglected at the Southport facility. Plaintiff sues Officer Burke for "civil violation and bullying, intimidating [a] civilian." And construed liberally, Plaintiff also appears to allege that Officer Burke committed a crime by filing a false police report, which the Court assumes to be the report attached to the Complaint.

Plaintiff identifies her claim against Dr. Fider as one of "defamation and Tampering with U.S. District Court Case 3:22 cv 221, Alicea v. Bridgeport." There are no other allegations regarding Dr. Fider.

Lastly, Plaintiff identifies her claim against Officer Paris as "Tampering with providing records, placed civilian in interrogation room then plain ignored civilians calls. Feel unsafe to return to FPD." She further alleges that Officer Paris "Tampering with Appeals court case Alicea v. Bridgeport et al. 2nd Circuit Appeals in NY."

Insofar as the Plaintiff attached the Incident Report from March 28, 2022, the Court considers its content, summarized as follows: On March 28, 2022, at 7:35 a.m., the police received a report of a family member being disruptive and arguing with staff at the Southport nursing home.

---

containing the docket entry, Plaintiff writes: "On 5/10/22 Judge KAD gave a recommended ruling to Dismiss – This case is at 2nd Circuit Appeals now. – judges switched? Unsure why." On July 18, 2023, the appeal was dismissed because it "lack[ed] an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *see* 28 U.S.C. § 1915(e); *Alicea v. Bridgeport,* AC No. 22-1120 at ECF No. 92.

Octavio Alicea, a patient at the facility, is a conserved person. His conservator is Attorney Fransica Hodges. On that date, Octavio's daughter, Maria Alicea (Plaintiff), arrived to remove Octavio from the facility. Staff members called the Fairfield Police because "this was against the direction from Octavio's conservator." Staff reported that Plaintiff became argumentative and began raising her voice, yelling at staff members and video recording staff, which is a violation of the facility's policy. Dr. Fider explained to the responding police officers that Plaintiff had brought civil litigation against the facility, but that the suit was dismissed. Dr. Fider reported that "Maria Alicea continues to be an antagonist" and that she "did not follow visitation protocol by signing in as a guest and [he did] not know how Alicea gained access to the building." Dr. Fider also advised that Maria Alicea is "not on the emergency contact list for her father" and that he does "not want Maria Alicea back at the [facility] for the welfare of their patient, Octavio Alicea and [the] protection of his staff." Finally, the Report reflects that "Maria Alicea was contacted via phone and warned not to return to Southport Center for Nursing and Rehabilitation or [she could] be subject to arrest. Maria stated she understood."

**Discussion**

*Dr. Fider's Motion to Dismiss*

Dr. Fider seeks dismissal and asserts that the Complaint, even with its attachments, is bereft of allegations to support a claim of defamation. By response dated January 24, 2023, Plaintiff asserts a litany of new allegations which appear nowhere in the Complaint or its attachments. *See* ECF No. 35. She alleges that Dr. Fider defamed her to Officer Burke and a heretofore unnamed "Conservator Cardona" and that he stated that she "abuses her father." *See id.* at 3. She further appears to assert—for the first time—that Dr. Fider is a state actor and that he, in concert with Officers Burke and Paris, has deprived her of her constitutional rights. By way of "Final" response

to Dr. Fider's motion to dismiss filed February 24, 2023, Plaintiff offers additional allegations that are absent from the Complaint or its attachments. *See* ECF No. 37. She reiterates her claim that Dr. Fider has and continues to violate her constitutional rights. To this opposition, Plaintiff attaches a portion of the Rule 26(a) Initial Disclosures received from Defendants Burke and Paris to purportedly support these new theories of liability and factual allegations.[2]

As discussed above, Plaintiff identifies two claims against Dr. Fider—defamation and tampering with her civil court case. As an initial matter, the Court cannot discern any legally cognizable claim against Dr. Fider that might derive from the dismissal of Plaintiff's case in *Alicea v. Bridgeport et al.,* 3:22 cv 221 (KAD). The complaint in that case was dismissed for a multitude of reasons following Initial Review pursuant to 28 U.S.C. §1915 *before* any defendants were served or appeared. The dismissal did not relate to Dr. Fider in any way. And the appeal of the court's dismissal was itself dismissed as lacking any basis in law or fact. *See supra, Alicea v. Bridgeport,* AC No. 22-1120. Accordingly, this claim is DISMISSED. *See Gonzalez v. U.S.*, Civil Action No. 3:13-CV-650 (CSH), 2014 WL 3738179, at *3 (D. Conn. July 29, 2014) ("…[T]he district court has the authority to dismiss actions…in the rare case when it faces a truly frivolous suit.") (citing *Abrams v. Sprizzo*, 201 F.3d 430, 1999 WL 1295815 (Table), at *1 (2d Cir. 1999); *see also Denton v. Hernandez*, 504 U.S. 25, 32 (1992) (holding that a court may find a complaint frivolous "when the facts alleged rise to the level of the irrational or the wholly incredible, whether or not there are judicially noticeable facts available to contradict them").

---

[2] The initial disclosures do not shed any light on the substance of Plaintiff's claims. And because the Court cannot consider materials or allegations outside the Complaint, it does not assess the sufficiency of her pleadings by reference to these new allegations or attached materials.

*Defamation*

Turning to Plaintiff's defamation claim, the Court similarly concludes that the allegations in the Complaint do not plausibly allege defamation. A defamatory statement is a "communication that tends to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him…" *Bailey v. Nexstar Broadcasting, Inc.*, No. 3:19-cv-00671 (VLB), 2020 WL 1083682, at *5 (D. Conn. Mar. 6, 2020). It is well settled that "for a claim of defamation to be actionable, the statement must be false…and under the common law, truth is an affirmative defense to defamation." *Gleason v. Smolinski,* 319 Conn. 394, 431, 125 A.3d 920, 947 (2015). "To be actionable, the statement in question must convey an objective fact, as generally, a defendant cannot be held liable for expressing a mere opinion. *NetScout Sys., Inc. v. Gartner, Inc.*, 334 Conn. 396, 410, 223 A.3d 37, 47 (2020).

"To establish a prima facie case of defamation, the plaintiff must demonstrate that: (1) the defendant published a defamatory statement; (2) the defamatory statement identified the plaintiff to a third person; (3) the defamatory statement was published to a third person; and (4) the plaintiff's reputation suffered injury as a result of the statement." *Simms v. Seaman*, 308 Conn. 523, 547–48, 69 A.3d 880 (2013). The test of a defamation complaint's sufficiency is "whether it is detailed and informative enough to enable [a] defendant to respond…" *Kelly v. Schmidberger*, 806 F.2d 44,46 (2d Cir. 1986). Thus, a plaintiff must plead "what defamatory statements were made…when they were made, and to whom they might have been made." *Abrahams v. Young & Rubicam*, 979 F. Supp. 122, 128 (D. Conn. 1997). And to "constitute a publication it is necessary that the defamatory matter be communicated to someone other than the person defamed." Restatement (First) of Torts § 577 (1938).

Here, Plaintiff's claims contain absolutely no factual allegations and reflect only the wholly conclusory allegation that she was suing Dr. Fider for defamation. However, the attached police Incident Report, considered part of the Complaint for purposes of a 12(b)(6) motion to dismiss, does contain Dr. Fider's statements to the reporting officer. They include, first, that Plaintiff had "entered civil litigation against the facility." This statement is neither defamatory nor false, as Plaintiff herself cites to the litigation in which she had sued the facility (*Alicea v. Bridgeport et al.*, 3:22-cv-221 (KAD). Second, he reported that the suit was dismissed but Plaintiff "continues to be an antagonist." The suit was dismissed, as Plaintiff alleges. And that Dr. Fider considers Plaintiff an antagonist is clearly an opinion. *See Hotchner v. Castillo-Puche*, 551 F.2 910, 913 (2d Cir. 1977) ("A writer cannot be sued for simply expressing his opinion of another person, however unreasonable the opinion or vituperous the expressing of it may be."); *see also Goodrich v. Waterbury Republican-American, Inc.*, 188 Conn. 107, 111, 448 A.2d 1317 (1982) ("An opinion…is a personal *comment* about another's conduct, qualifications or character that has some basis in fact.") (citations omitted; emphasis in original). Third, he reported that Plaintiff "did not follow visitation protocol by signing in." Plaintiff does not allege that this statement was false, but even if she did sign in, her failure to do so would not "lower [her] in the estimation of the community or to deter third persons from associating or dealing with [her]…" *See Bailey*, 2020 WL 1083682, at *5. Fourth, that Plaintiff "is not on the emergency contact list for her father." Again, Plaintiff does not allege that this statement is false, but in any event, it is not defamatory because it is a ministerial fact. *See id.* And finally, Dr. Fider reported that he did not want Plaintiff "back at the [facility] for the welfare of their patients, Octavio Alicea, and protection of his staff." This, too, is a nonactionable opinion. Dr. Fider's "want" is not a fact about Plaintiff. And his reasoning—protection of his patient and staff—is clearly rooted in his opinion that Plaintiff poses

a risk to them.[3] As Plaintiff's Complaint fails to plausibly allege defamation with respect to Dr. Fider's statements to the police on March 28, 2022, the claims against Dr. Fider must be dismissed.

As indicated above, a *pro se* plaintiff should be afforded an opportunity to replead if it appears she may be able to plausibly assert her claims. *See Gomez*, 171 F.3d at 796. In making this assessment, the Court will consider the additional allegations and materials submitted in opposition to the motion to dismiss. With respect to her defamation claim, Plaintiff first asserts that Dr. Fider stated she "abuses her father." *See* ECF No. 35 at 3. This appears to be a direct reference to Dr. Fider's statements to the Fairfield police officers that he does not want Plaintiff back to the facility out of concern for the safety of his staff and the welfare of his patient. She clarifies that she seeks "compensation for the ill treatment via slander and defamation which indeed started its root from Dr. Fider and his desire to impede, damage, and end and destroy civil matters 3:22 -cv-00221." *See id.* But Dr. Fider's opinion that Plaintiff poses a risk to the welfare of her father is a far cry from an affirmation that she abuses her father. On February 24, 2023, in her second opposition to the motion to dismiss, Plaintiff asserts: "Dr. Fider has been attacking me verbally with his Southport Staff due to his reporting to keep my dad and I apart. Hence, giving me a DCF reporter and CEO of a MH non profit program, a horrible reputation. Reporting a horrific lie like I abuse my father *to Officer Burke*." ECF No. 37 at 3 (emphasis added). Plaintiff's conclusory allegations about Dr. Fider "verbally attacking" her to the Southport staff do not suffice to state a viable defamation claim, and again, Plaintiff circles back to and relies upon the statements given to Officer Burke as the basis of her claim. As the Court has already determined that the statements actually made to Officer Burke are not actionable, leave to amend is not appropriate.

---

[3] The Court recognizes that the distinction between statements of act and statements of opinion are not always obvious. *See NetScout,* 334 Conn. at 412. This case does not present such nuance.

Plaintiff also includes a myriad of new claims in her opposition. She asserts that Dr. Fider is a state actor and that he is liable under Section 1983 for violations of her constitutional rights. However, just as the nursing home was not a state actor for purposes of her prior litigation,[4] Dr. Fider is not a state actor against whom constitutional claims may be brought.

Title 42, Section 1983 provides in relevant part: "Every person who, under color of any statute…subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." Accordingly, liability attaches under § 1983 only when a defendant acted under color of state law, and a private actor may not be held liable under § 1983 unless it was acting as an instrument of the state. *See, e.g.*, *Tancredi v. Metropolitan Life Ins. Co.*, 316 F.3d 308, 312 (2d Cir. 2003) (citations omitted). Private medical facilities and their employees are not generally considered state actors. *See Parker v. Blackerby*, 368 F. Supp. 3d 611, 624 (W.D.N.Y. 2019); *see also McArthur v. Yale New Haven Hosp.*, No. 3:20-cv-998 (SRU), 2021 WL 3725996, at * 5 (D. Conn. Aug. 23, 2021) ("Indeed, courts in this District routinely dismiss section 1983 claims against [Yale New Haven Hospital] (or one of its employees) because the plaintiff failed to plausibly allege that [Yale New Haven Hospital] was a state actor or was acting under color of state law.") (citing cases); *Febres v. Yale New Haven Hosp.*, No. 19-CV-1195 (KAD), 2019 WL 7050076, at * 2 (D. Conn. Dec. 23, 2019) ("Here, while it is conceivable that Yale New Haven

---

[4] As observed by Judge Vatti, "Southport Rehabilitation Center likewise is not subject to suit under Section 1983. 'In order to state a claim under § 1983, a plaintiff must allege that he was injured by either a state actor or a private party acting under color of state law.' *Cambriello v. Cty. of Nassau*, 292 F.3d 307, 323 (2d Cir. 2002). '[N]ursing home[s]…are generally not proper § 1983 defendants because they do not act under color of state law.' *White v. St. Joseph's Hosp.*, 369 F. App'x 225, 226 (2d Cir. 2010) ('the presence of state funding or regulation, in the absence of some concerted action with state officials, does not transform a private party's actions into state action') (citing *Blum v. Yaretsky*, 457 U.S. 991 (1982) ('day-to-day administration of a nursing home' is not the sort of activity 'traditionally and exclusively made by the sovereign for and on behalf of the public'))." *See Alicea v. Bridgeport et al.*, 3:22-cv-221 (KAD) at ECF No. 24.

Hospital receives some public funding, and is accordingly tied to the State in some way…such a general tie to the State is insufficient to support a Section 1983 claim.") (quotations omitted); *Chance v. Machado*, No. 08-CV-774 (CSH), 2009 WL 3416422, *2 (D. Conn. Oct. 22, 2009) (dismissing § 1983 claims against doctors employed by Bridgeport Hospital, which is privately owned, for failure to allege state action).[5]

And although Plaintiff asserts that her father's conservatorship and oversight by the probate court somehow renders Dr. Fider a state actor, she is incorrect. Court-appointed administrators, guardians or conservators for adults do not act "under color of state law." *Heinemann v. Patchey*, No. 3:16-cv-774 (MPS), 2017 WL 1115203, at *4 (D. Conn. Mar. 24, 2017) (citing *Milan v. Wertheimer*, 808 F.3d 961, 964 (2d Cir. 2015) ("[T]he analogy of a law guardian to a public defender is apt. Although both are supplied and funded by the state, each acts according to the best interests of the client with no obligation to the mission of the state."); *see also*, *e.g.*, *Rzayeva v. United States*, 492 F. Supp. 2d 60, 81 (D. Conn. 2007) ("Because a court-ordered conservator exercises independent professional judgment in the interest of his client, he cannot be considered a state actor…The fact that an individual is appointed by the state and paid with state funds is insufficient to render an individual a state actor."). The fact that Dr. Fider provides care to a conserved person and takes direction from the conservator (who is herself not a state actor) does not render him a state actor.

Accordingly, Dr. Fider's motion to dismiss is GRANTED. Plaintiff shall not be granted leave to amend.

---

[5] Plaintiff, in one of her several federal lawsuits, previously sued Bridgeport Hospital and a number of its employees for violations of her constitutional rights pursuant to 42 U.S.C. § 1983. *See Alicea v. Yang*, 3:21-cv-1638 (KAD) at ECF No. 11. Those claims were dismissed because the defendants could not be plausibly alleged to be state actors.

*Defendant Burke's Motion to Dismiss*

As discussed above, Plaintiff first asserts an excessive force claim against Defendant Burke as well as a claim for "bullying" and "intimidating" Plaintiff.[6] Burke seeks dismissal on the grounds that Plaintiff has not plausibly alleged any constitutional violations and because the other claims she seeks to bring are not cognizable. Again, Plaintiff responds with an array of new allegations and claims which are not contained in her Complaint. In reply, Defendant Burke urges the Court to ignore the allegations that do not appear in the Complaint, but submits that even if considered, dismissal is required. The Court agrees.

"The Fourth Amendment prohibits the use of unreasonable and therefore excessive force by a police officer in the course of effecting an arrest." *Jamison v. Metz*, 541 F. App'x 15, 19 (2d Cir. 2013) (summary order) (internal quotation marks omitted). "A police officer violates the Fourth Amendment if the amount of force he uses in effectuating an arrest is objectively unreasonable in light of the facts and circumstances confronting the officer." *Lennox v. Miller*, 968 F.3d 150, 155 (2d Cir. 2020) (internal quotation marks and alterations omitted). Here, Plaintiff was not arrested or even physically restrained in any fashion, which is reflected in the Incident Report attached to the Complaint and confirmed in Plaintiff's opposition. *See* ECF No. 22 at 3 ("When the second officer got out of his vehicle and Officer Burke asked for my ID, I did not feel safe at all, I told officer Burke I will go get it and I got in my car and drove off.") Indeed, there is no allegation that Officer Burke touched her in any fashion. Plaintiff asserts that she was "detained" when she was told to wait outside and was thereby separated from her father. Even if this interaction with Officer Burke could be fairly characterized as being detained, it does not give rise to an excessive force claim. As such, she has not plausibly alleged an excessive force claim, nor

---

[6] There is no claim that Officer Burke was not acting under color of state law, and he was.

would she be able to do so. *See Rizk v. City of New York,* 462 F. Supp. 3d 203, 222 (E.D.N.Y. 2022) (dismissing excessive force claim where no physical force was used at all). This claim is dismissed with prejudice.

Plaintiff also alleges Officer Burke violated her rights when he called her and advised her that if she returned to the nursing home facility, she could be arrested. She characterizes this phone call as a threat and as an effort to bully and intimidate her. She asserts that this conduct violated her constitutional rights depriving her of "moving freely in peace." ECF No. 22 at 6. The Court does not doubt Plaintiff's sincerity—that she feels she was treated unfairly by Officer Burke on March 28, 2022—but her allegations, even as expanded upon in her opposition, do not give rise to a constitutional violation.

Lastly, Plaintiff asserts that Officer Burke filed a false police report in violation of Conn. Gen. Stat. § 53a-180(c).[7] The Court first observes that in the body of the Complaint, it appears that this claim is advanced against Officer Paris. However, Officer Burke completed and signed the Incident Report from March 28, 2022, so the Court construes the claim as against him. Regardless against whom the claim may have been asserted, Plaintiff faces the insurmountable hurdle that this criminal statute does not provide, explicitly or impliedly, a private right of action. *See Desmond v. Yale-New Haven Hospital, Inc.* 138 Conn. App. 93, 98 (2012) ("Violations of … a criminal statute may be prosecuted by the state's attorney, not by private individuals."); *Xu v. Neubauer,* 166 F. Supp. 3d 203, 207 (D. Conn. 2015) (where claims were dismissed for failure to state a claim because none of the criminal statutes cited by the plaintiff provided private rights of action); *Cort v. Ash,* 422 U.S. 66, 80 (1975) (no private cause of action existed under "a bare criminal statute,

---

[7] Had Plaintiff been arrested or charged with any offense, the Court would have construed this claim as one of false arrest in violation of the Fourth Amendment. However, as she was not charged, the Court addresses the claim as put forth—a violation of the Connecticut penal code.

with absolutely no indication that civil enforcement of any kind was available to anyone"); *Gawlik v. Malloy*, CV185043126, 2019 WL 3021829, at *4 (Conn. Super. Ct. May 31, 2019) (dismissing civil claims brought under the state penal code for threatening and coercion); *Plumb v. Griffin*, 74 Conn. 132, 50 A. 1, 2 (1901) ("Penal statutes, strictly and properly, are those imposing punishment for an offense against the state. And the expression 'penal statutes' does not ordinarily include statutes which give a private action against a wrongdoer. The words 'penal' and 'penalty,' in their strict and primary sense, denote a punishment, whether corporal or pecuniary, imposed and enforced by the state for a crime or offense against its laws.") (citation omitted; internal quotation marks omitted).

For the foregoing reasons, Defendant Burke's motion to dismiss is GRANTED. Plaintiff shall not be granted leave to amend.

*Officer Paris' Motion to Dismiss*

As discussed above, Plaintiff identifies her claim against Officer Paris as "Tampering with providing records, placed civilian in interrogation room then plain ignored civilians calls. Feel unsafe to return to FPD." She further alleges that Officer Paris "Tampering with Appeals court case Alicea v. Bridgeport et al. 2nd Circuit Appeals in NY." Defendant Paris asserts that the events which purport to support her Fourth Amendment claim, even if the Court considers the expanded narrative contained in her opposition, are insufficient to establish a violation of the Fourth Amendment. The Court agrees.

In her opposition, Plaintiff explains in greater detail the nature of this claim. She alleges that in connection with the writing of her brief for the Second Circuit Court of Appeals,[8] she went to the Fairfield Police Department to retrieve a clean copy of the March 28, 2022 Incident Report.

[8] This is a reference to the appeal of this Court's dismissal of her claims in *Alicea v. Bridgeport*, 3:22-cv-221 (KAD).

*See* ECF No. 22 at 4. She alleges that she arrived around 7:30 a.m. and went to the Public Records window, requesting the report. *See id.* She alleges that she told the Clerk and Officer Jenkins that she needed the report for a matter before the Second Circuit. Officer Jenkins then "phoned upstairs after I reported that the police damaged my civil matters. He told me he had to speak to his Lt. to make sure the Police Report is accurate."[9] *Id.* Officer Jenkins then told Plaintiff she needed to return. He provided the name of Officer Paris and a phone number, and she did not know why he needed to do so. *See id.* Plaintiff filed a civilian complaint against Officer Burke for the March 28, 2022 incident and Officer Jenkins for "tampering with given me public records on 8/12/22," because "it infringes upon my 1st Amendment of free Public Information Act."[10] *Id.*

Later in the day, on August 12, 2022, Plaintiff spoke with Defendant Paris and he told her she could retrieve the records. *See id.* When she arrived, Officer Paris asked her to sit and wait in a small room, though she was not sure why because there were chairs in the lobby. Plaintiff was uneasy in the room, having observed a camera and mirror window. *See id.* [11] Officer Paris did not return immediately. "Feeling awkward" about being in the room, Plaintiff used the bathroom. When she came out, Officer Paris was still unavailable, so she left. Ultimately, she used the copy of the Incident Report she already had in fashioning her appellate brief. *See id.* at 5.

Preliminarily, to the extent Plaintiff asserts a claim for tampering with her appeal, she fails to plausibly allege a cognizable cause of action.[12] As noted above, the Second Circuit Court of

---

[9] Plaintiff claims that this evinced the crime of evidence tampering.

[10] Although unclear, it appears Plaintiff filed the civilian complaint while at the police department that same day.

[11] Plaintiff does not allege that she was video recorded.

[12] Even if construed as a claim that Officer Paris infringed her First Amendment right of access to the Courts, the claim would be frivolous. A plaintiff asserting such a claim "must assert non-conclusory allegations demonstrating both (1) that the defendant acted deliberately and maliciously, and (2) that the plaintiff suffered an actual injury." *Vega v. Artus*, 610 F. Supp. 2d 185, 201 (N.D.N.Y. 2009). Plaintiff's narrative, accepted as true, does not support a finding that Officer Paris acted maliciously. Nor has Plaintiff alleged an "actual injury," for example, that she was prevented from filing something in court or had her matter determined against her as a result of the defendant's actions. *See David v. Goord*, 320 F.3d 346, 351–52 (2d. Cir. 2003) (Two incidents of tampering with inmates legal mail was insufficient to establish actual injury because Plaintiff was not hindered in his efforts to pursue his legal claims); *New*

Appeals dismissed Plaintiff's appeal as lacking any basis in law or in fact. *See supra, Alicea v. Bridgeport,* AC No. 22-1120. Plaintiff does not allege that Officer Paris was even aware of her appeal—she explicitly states that she advised the Clerk and Officer Jenkins of this fact. Second, she has not and cannot identify any basis to conclude that her appeal was dismissed as a result of these events.

Nor do the events of August 12, 2022 constitute a Fourth Amendment violation. The Fourth Amendment provides that a person shall not be seized absent probable cause. *See* U.S. CONST. AMEND. IV. ("The right of the people to be secure in their persons…against unreasonable searches and seizures, shall not be violated…but upon probable cause"). A seizure occurs when "by means of physical force or show of authority," an officer has "restrained the liberty of a citizen." *See Terry v. Ohio*, 392 U.S. 1, 19 (1968). *See also, Michigan v. Chesternut*, 486 U.S. 567, 573 (1988) (finding that police can only have seized an individual when that person believes that they are "not free to leave").

Under even the expanded narrative contained in Plaintiff's opposition, Plaintiff was not seized as contemplated under the Fourth Amendment. She was asked to wait in an unlocked room from which she was free to leave at any time. She was not in custody, handcuffed, charged or even under investigation for any offense. She appeared of her own volition at the police department to retrieve some records. She, too, left of her own volition when she was uneasy and did not wish to wait any longer. It is readily apparent that not only did she not think she was not free to leave, but she also understood that she was, because that is precisely what she did. *See, e.g., United States v.*

---

*York Civil. Lib. Union v. New York City Transit Auth.*, 684 F.3d 286, 298 (2d Cir. 2012) (recognizing that the First Amendment guarantees a qualified right of access to civil trials and their related proceedings and records but that to have standing, "a plaintiff must demonstrate an actual and imminent…threat of a concrete and particularized injury in fact") (internal citations and citations omitted). Officer Paris was, in Plaintiff's view, too slow to produce the records she wanted, so she left. This is not a constitutional violation.

*Mendenhall*, 446 U.S. 544, 553 (1980) (plurality opinion of Stewart, J.) (finding a person "seized" only when freedom of movement is restrained); *U.S. v. Madison*, 936 F.2d 90, 93 (2d Cir. 1991) (noting that the court's analysis turns on the "degree of voluntariness that an individual maintains in an encounter with police").

Accordingly, Defendant Paris' motion to dismiss is GRANTED. Plaintiff shall not be granted leave to amend.[13]

**Conclusion**

Defendant Fider's motion to dismiss (ECF No. 26) is GRANTED. The claims against Dr. Fider are dismissed with prejudice. Defendants' Burke and Paris motion to dismiss (ECF No. 15) is GRANTED. The claims against Defendants Burke and Paris are DISMISSED with prejudice. The Clerk of Court is directed to close this case.

**SO ORDERED** at Bridgeport, Connecticut this 31st day of August 2023.

 */s/ Kari A. Dooley*            
KARI A. DOOLEY
UNITED STATES DISTRICT JUDGE

---

[13] Plaintiff repeatedly asserts that her encounters with Defendants have caused her emotional distress. Whether she could, if given permission to replead, state a cause of action for either negligent infliction of emotional distress or intentional infliction of emotional distress—which she does not assert—the Court does not decide. Given that the Complaint fails to state any viable claim under federal law, the exercise of supplemental jurisdiction over any remaining state law claims would not be warranted. *See Klein & Co. Futures, Inc. v. Bd. of Trade of City of New York*, 464 F.3d 255, 262 (2d Cir. 2006) ("It is well settled that where, as here, the federal claims are eliminated in the early stages of litigation, courts should generally decline to exercise pendent jurisdiction over remaining state law claims.").